JUDGMENT ENTRY.
This appeal is considered on the accelerated calendar under App.R. 11.1(E) and Loc.R. 12, and this Judgment Entry shall not be considered an Opinion of the Court pursuant to S.Ct.R.Rep.Op. 3(A).
Defendant-appellant Drew Sloan appeals his convictions for murder and aggravated robbery following a jury trial. In his appeal, he raises the following assignments of error: (1) he was not afforded the effective assistance of counsel; (2) he was materially prejudiced by gruesome and cumulative death-scene photographs that were shown to the jury; and (3) his convictions were against the manifest weight of the evidence.
In his first assignment of error, Sloan argues that he was denied the effective assistance of counsel. To prevail on his claim, Sloan "must show that [his] counsel's representation fell below an objective standard of reasonableness"[1] and that he was prejudiced by counsel's deficient performance.[2] Prejudice is demonstrated by showing "that there is a reasonable probability that, but for * * * [the] errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."[3] Both prongs must be met to demonstrate ineffective assistance of counsel.[4]
Moreover, "it is presumed that a properly licensed attorney is competent, and ineffective assistance cannot be based on debatable tactical decisions * * *."[5]
Sloan claims that his trial counsel was ineffective because he failed to file a motion to suppress his statements to police, requested a continuance for unnecessary evidence, failed to appear on time for the first day of trial, made groundless objections to an eyewitness's testimony, and made an unwarranted suggestion in closing argument based on facts not in evidence. For each of these arguments, Sloan has failed to demonstrate how he was prejudiced by any of the alleged deficiencies such that the outcome of his trial would have been different.
With respect to the failure to file a motion to suppress, such a failure does not per se constitute ineffective assistance of counsel.[6]
In order to succeed on such a claim, the defendant must show there is a solid possibility that the court would have suppressed the evidence.[7]
"Moreover, counsel is not deficient for failing to raise a meritless issue."[8]
Having reviewed the record, we conclude that there is nothing to suggest that a motion to suppress would have been granted with respect to Sloan's statements to police. Sloan contacted the police voluntarily and signed a written waiver of his Miranda rights. He was offered food and drink at the beginning and end of the interview session; he was permitted to use the restroom; and he was not threatened or coerced into giving the statements. Moreover, Sloan was given the opportunity to record his statement, but chose not to do so. Given the totality of the circumstances surrounding Sloan's statements, we cannot say his trial counsel was ineffective for failing to file a motion to suppress.
Sloan next claims his counsel was ineffective for requesting a continuance to investigate the significance of a bullet and a bullet hole found in his own impounded car. The record reveals that Sloan did not disclose the existence of the bullet hole to his counsel until the Saturday before trial when he asked his attorney to investigate. The trial court granted his counsel a two-week continuance to investigate the matter. Because the continuance was instigated by Sloan, we fail to see how he was prejudiced by his counsel's actions.
We also fail to see how Sloan was prejudiced by his trial counsel's delay in appearing on the first day of the trial. While his counsel's delay irritated the trial court, the trial court's comments on the matter were not communicated to the jury. Moreover, while we agree there was no basis to trial counsel's claims that a witness had been overheard talking to another witness during the trial, trial counsel's pursuit of the motion was reasonable given the highly charged nature of the proceedings against his client. Sloan also takes issue with his counsel's statement during closing argument that he could see a gun in a photograph that depicted the contents of a van, when he had never questioned any witness about this fact. Although this may not have been the wisest or most effective trial tactic, his counsel could have been attempting to plant an idea with the jury without giving the state the opportunity to present rebuttal evidence. Because none of his counsel's actions or inactions were outcome-determinative, we cannot conclude that trial counsel was ineffective. We, therefore, overrule the first assignment of error.
In his second assignment of error, Sloan argues that the death-scene photographs shown to the jury were so cumulative and inflammatory that they injected an improper emotional basis into his convictions.
"Under Evid.R. 403, the admission of photographs is left to a trial court's sound discretion. [Citations deleted.] Nonrepetitive photographs in a capital case, even if gruesome, are admissible if the probative value of each photograph outweighs the danger of material prejudice to the accused. [Citations deleted.]"[9]
The record reveals that Sloan made no objections to the use of the photographs. Rather, the issue arose because a juror had asked the court to remove her from the case because of the death-scene photographs identified during the testimony of Criminalist Robert Carpenter. Both the state and defense counsel had used a series of photographs during their questioning of Carpenter. After much discussion between the trial court, the state, and defense counsel, the juror was brought into the courtroom for questioning. The juror stated that she found the pictures upsetting not because they were gruesome, but because they reminded her of her own son's death as a result of a hit-and-run accident, and she did not feel she should sit on the jury. She was then excused from jury service.
When the trial court ultimately admitted the photographs into evidence, it stated on the record that it would not admit duplicative photographs and, further, that it would only permit the admission of photographs establishing the elements of the crime. The photographs that were ultimately admitted into evidence showed the position and location of the victim's body, the angle of the entry wound, the condition of his clothing, and his cause of death. Because the photographs were not cumulative or gruesome, and because they illustrated the testimony of the state's witnesses with respect to their description of the crime scene and the nature and circumstances of the crime, we cannot say that the trial court abused its discretion in admitting the photographs. We, therefore, overrule the second assignment of error.
In his third assignment of error, Sloan complains that his convictions for murder and aggravated robbery were against the manifest weight of the evidence because the state failed to present any physical evidence linking him to the victim's murder. When addressing a manifest-weight claim, this court must review the entire record, weigh the evidence and all inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts, the jury clearly lost its way and created a manifest miscarriage of justice.[10]
Here, William Bush testified that as he rode as a passenger in Lamont Ross's van, he became aware that Ross intended to sell a quantity of marijuana to Sloan and Daniel White. Bush heard White give what appeared to be an order to Sloan, who was sitting in the second seat of the van, to brandish his gun. Bush stated that as Sloan aimed his gun at Ross, Sloan told Ross to "give it up, I ain't playing." As Ross turned to face Sloan, he was shot one time in the shoulder. Bush's testimony was corroborated by police officers who had responded to the scene and by the coroner. The responding officers described Ross's body as being wedged between the front seats with his head lying on the second seat of the van. His pants were unbuckled and his wallet, which contained no money, was located in the back of the van. The police also located a shell casing near Ross's body. The coroner testified that Ross's wound was consistent with Ross having turned his right shoulder back towards the middle seat of the van where Sloan had been seated. Sloan's criminal intent was also corroborated by Yvette Thompson, who testified that Sloan had called her earlier that day with his plan to "hit a lick" and his request to be let into her home afterwards. Sloan's statements to police also corroborated major aspects of Bush's testimony. Sloan gave three statements to the police. In his last statement, Sloan admitted that he was known for robbing drug dealers and that he had engaged in drug deals with White. Sloan told police that he felt Bush had recognized him as someone who had robbed a number of his friends. Sloan stated he had then struggled with Bush in the van, and that during the struggle he had shot Ross in the shoulder. Sloan further stated that "if he could have done that day over again, it probably would still have happened that way." Given this evidence, we cannot say the jury clearly lost its way and created a manifest miscarriage of justice. We, therefore, overrule the third assignment of error and affirm the judgment of the trial court.
Further, a certified copy of this Judgment Entry shall constitute the mandate, which shall be sent to the trial court under App.R. 27. Costs shall be taxed under App.R. 24.
Doan, P.J., Painter and Sundermann, JJ.
[1] Strickland v. Washington (1984), 466 U.S. 668, 688,104 S.Ct. 2052.
[2] Id. at 687.
[3] Id. at 694.
[4] Id. at 697.
[5] State v. Bond, 1st Dist. No. C-990195.
[6] State v. Madigral (2000), 87 Ohio St.3d 378, 389, 2000-Ohio-448,721 N.E.2d 52.
[7] State v. Robinson (1996), 108 Ohio App.3d 428, 433,670 N.E.2d 1077.
[8] State v. Yarbrough, 104 Ohio St.3d 1, 2004-Ohio-6087, 817 N.E.2d 845, ¶ 117.
[9] State v. Ahmed, 103 Ohio St.3d 27, 2004-Ohio-4190, 813 N.E.2d 637, ¶ 95.
[10] State v. Martin (1983), 20 Ohio App.3d 172, 175,485 N.E.2d 717.